**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Joni Ellen Payton,<br><br>            Plaintiff,<br><br>vs.<br><br>Carolyn W. Colvin, Acting Commissioner of Social Security,<br><br>           Defendant. | No. CV-12-02352-PHX-NVW<br><br>**ORDER** |

Plaintiff Joni Ellen Payton seeks review under 42 U.S.C. § 405(g) of the final decision of the Commissioner of Social Security ("the Commissioner"), which denied her supplemental security income under section 1614(a)(3)(A) of the Social Security Act. Because the decision of the Administrative Law Judge ("ALJ") is supported by substantial evidence and is not based on legal error, the Commissioner's decision will be affirmed.

**I.     BACKGROUND**

    **A.     Factual Background**

Payton was born in December 1965. She has a limited education and has no past relevant work. She has been diagnosed with hepatitis C, human immunodeficiency virus (HIV), mild sleep apnea, headaches, cervical and lumbar degenerative disc disease, and obesity. She is generally able to drive, shop for groceries, go to medical appointments, work in the garden, cook, and do light household chores. She helps her teenaged son with homework and can play board games.

### B. Procedural History

On October 1, 2010, Payton applied for supplemental security income, alleging disability beginning January 15, 2003. On April 10, 2012, she appeared with her attorney and testified at a hearing before the ALJ. A vocational expert also testified.

On April 19, 2012, the ALJ issued a decision that Payton was not disabled within the meaning of the Social Security Act. The Appeals Council denied Payton's request for review of the hearing decision, making the ALJ's decision the Commissioner's final decision. On November 2, 2012, Payton sought review by this Court.

## II. STANDARD OF REVIEW

The district court reviews only those issues raised by the party challenging the ALJ's decision. *See Lewis v. Apfel*, 236 F.3d 503, 517 n.13 (9th Cir. 2001). The court may set aside the Commissioner's disability determination only if the determination is not supported by substantial evidence or is based on legal error. *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007). Substantial evidence is more than a scintilla, less than a preponderance, and relevant evidence that a reasonable person might accept as adequate to support a conclusion considering the record as a whole. *Id.* In determining whether substantial evidence supports a decision, the court must consider the record as a whole and may not affirm simply by isolating a "specific quantum of supporting evidence." *Id.* As a general rule, "[w]here the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002) (citations omitted).

The ALJ is responsible for resolving conflicts in medical testimony, determining credibility, and resolving ambiguities. *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). In reviewing the ALJ's reasoning, the court is "not deprived of [its] faculties for drawing specific and legitimate inferences from the ALJ's opinion." *Magallanes v. Bowen*, 881 F.2d 747, 755 (9th Cir. 1989).

### III. FIVE-STEP SEQUENTIAL EVALUATION PROCESS

To determine whether a claimant is disabled for purposes of the Social Security Act, the ALJ follows a five-step process. 20 C.F.R. § 416.920(a). The claimant bears the burden of proof on the first four steps, but at step five, the burden shifts to the Commissioner. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999).

At the first step, the ALJ determines whether the claimant is engaging in substantial gainful activity. 20 C.F.R. § 416.920(b). If so, the claimant is not disabled and the inquiry ends. *Id.* At step two, the ALJ determines whether the claimant has a "severe" medically determinable physical or mental impairment. § 416.920(c). If not, the claimant is not disabled and the inquiry ends. *Id.* At step three, the ALJ considers whether the claimant's impairment or combination of impairments meets or medically equals an impairment listed in Appendix 1 to Subpart P of 20 C.F.R. Pt. 404. § 416.920(d). If so, the claimant is automatically found to be disabled. *Id.* If not, the ALJ proceeds to step four. At step four, the ALJ assesses the claimant's residual functional capacity and determines whether the claimant is still capable of performing past relevant work. § 416.920(f). If so, the claimant is not disabled and the inquiry ends. *Id.* If not, the ALJ proceeds to the fifth and final step, where he determines whether the claimant can perform any other work based on the claimant's residual functional capacity, age, education, and work experience. § 416.920(g). If so, the claimant is not disabled. *Id.* If not, the claimant is disabled. *Id.*

At step one, the ALJ found that Payton has not engaged in substantial gainful activity since October 1, 2010. At step two, the ALJ found that Payton has the following severe impairments: hepatitis C, human immunodeficiency virus (HIV), mild sleep apnea, headaches, cervical and lumbar degenerative disc disease, and obesity. At step three, the ALJ determined that Payton does not have an impairment or combination of

impairments that meets or medically equals an impairment listed in Appendix 1 to Subpart P of 20 C.F.R. Pt. 404.

At step four, the ALJ found that Payton:

> has the residual functional capacity to perform sedentary work as defined in 20 CFR 416.967(a) except the claimant should never climb ladders, ropes, and scaffolds. She is able to occasionally climb ramps and stairs, balance, stoop, crouch, kneel, and crawl. In addition, the claimant should avoid concentrated exposure to extreme heat, irritants such as fumes, odors, dusts, and gases, chemicals, moving machinery, and unprotected heights.

The ALJ further found that Payton is unable to perform any of her past relevant work. At step five, the ALJ concluded that, considering Payton's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that Payton could perform.

## IV. ANALYSIS

### A. The ALJ Did Not Err in Evaluating Payton's Credibility.

In evaluating the credibility of a claimant's testimony regarding subjective pain or other symptoms, the ALJ is required to engage in a two-step analysis: (1) determine whether the claimant presented objective medical evidence of an impairment that could reasonably be expected to produce some degree of the pain or other symptoms alleged; and, if so with no evidence of malingering, (2) reject the claimant's testimony about the severity of the symptoms only by giving specific, clear, and convincing reasons for the rejection. *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009).

First, the ALJ found that Payton's medically determinable impairments could reasonably be expected to cause the alleged symptoms. Second, the ALJ found Payton's statements regarding the intensity, persistence, and limiting effects of the symptoms not

credible to the extent they are inconsistent with the ALJ's residual functional capacity assessment.

The ALJ provided the following specific, clear, and convincing reasons for finding Payton's statements regarding the intensity, persistence, and limiting effects of the symptoms not entirely credible. First, the record showed that Payton's HIV condition has been kept under good control with antiretroviral therapy, and she was successfully treated for hepatitis C in 2004. The ALJ concluded: "Generally asymptomatic conditions are not indicative of debilitating limitations. This lessens the claimant's credibility."

Second, regarding Payton's respiratory complaints, the record showed that Payton reported improvement following use of a CPAP machine, but despite numerous recommendations to quit smoking, she had not. The ALJ concluded:

> Continued cigarette usage, despite recommendations to quit, undermines the claimant's allegations of disabling symptoms and limitations, and suggests her respiratory symptoms were not as severe as alleged. Her credibility is damaged.

Third, Payton has complained of headaches, but neurological examinations were consistently within normal limits. Treatment consisted of only occasional medication prescribed by Payton's primary care physician. The ALJ reasoned that such conservative treatment is not consistent with debilitating symptoms and limitations and concluded that Payton's "credibility is effectively lessened."

Fourth, regarding Payton's neck and back pain, the record showed appropriate treatment with a pain specialist and improvement with medication, mild exercise, and injections. Payton reported doing well with pain medication. Thus, the ALJ concluded: "Symptoms effectively controlled with medication and radiofrequency ablation is not consistent with the claimant's allegations."

Fifth, the ALJ found that Payton had not been entirely compliant in taking prescribed medications, despite agreeing to take only medication prescribed by the pain

specialist. The ALJ concluded: "Not adhering to the contract signed with her treating specialist further diminishes the claimant's credibility as to her allegations."

Sixth, the ALJ found that treating physicians consistently observed that Payton did not appear to be ill or in acute distress, and physical examinations were typically within normal limits. Records indicated she was able to sit, stand, and walk with no difficulty. Payton reported no deficits with regard to activities of daily living to her treating physicians. Rather, on October 26, 2010, she reported that she had been "very active over the last few months" and had "actually taken up hiking." In 2011, Payton reported engaging in aerobics and exercising three times per week. The ALJ found these reports to be inconsistent with Payton's allegations of disability.

Finally, Payton described daily living activities that were not limited to the extent one would expect, given her complaints of disabling symptoms and limitations. The ALJ found that Payton's activities of daily living lent additional support to his conclusions.

The ALJ did not reject Payton's subjective symptom testimony entirely, but rather considered it along with "the combined effect of her conditions, including obesity, and the probable side effects of medication" to "find she is capable of performing a range of sedentary exertion."

Therefore, the ALJ did not err by finding Payton's statements regarding the intensity, persistence, and limiting effects of the symptoms not entirely credible because he provided specific, clear, and convincing reasons, supported by substantial evidence in the record, for doing so.

      **B.**    **The ALJ Did Not Err in Weighing Medical Source Evidence.**

           **1.**    **Legal Standard**

In weighing medical source opinions in Social Security cases, the Ninth Circuit distinguishes among three types of physicians: (1) treating physicians, who actually treat the claimant; (2) examining physicians, who examine but do not treat the claimant; and

(3) non-examining physicians, who neither treat nor examine the claimant. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). Generally, more weight should be given to the opinion of a treating physician than to the opinions of non-treating physicians. *Id.* Where a treating physician's opinion is not contradicted by another physician, it may be rejected only for "clear and convincing" reasons, and where it is contradicted, it may not be rejected without "specific and legitimate reasons" supported by substantial evidence in the record. *Id.* Moreover, the Commissioner must give weight to the treating physician's subjective judgments in addition to his clinical findings and interpretation of test results. *Id.* at 832-33.

Further, an examining physician's opinion generally must be given greater weight than that of a non-examining physician. *Id.* at 830. As with a treating physician, there must be clear and convincing reasons for rejecting the uncontradicted opinion of an examining physician, and specific and legitimate reasons, supported by substantial evidence in the record, for rejecting an examining physician's contradicted opinion. *Id.* at 830-31.

The opinion of a non-examining physician is not itself substantial evidence that justifies the rejection of the opinion of either a treating physician or an examining physician. *Id.* at 831. "The opinions of non-treating or non-examining physicians may also serve as substantial evidence when the opinions are consistent with independent clinical findings or other evidence in the record." *Thomas*, 278 F.3d at 957.

Moreover, Social Security Rules expressly require a treating source's opinion on an issue of a claimant's impairment be given controlling weight if it is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the record. 20 C.F.R. § 404.1527(d)(2). If a treating source's opinion is not given controlling weight, the weight that it will be given is determined by length of the treatment relationship, frequency of examination, nature

and extent of the treatment relationship, relevant evidence supporting the opinion, consistency with the record as a whole, the source's specialization, and other factors. *Id.*

Factors that an ALJ may consider when evaluating any medical opinion include "the amount of relevant evidence that supports the opinion and the quality of the explanation provided; the consistency of the medical opinion with the record as a whole; [and] the specialty of the physician providing the opinion." *Orn*, 495 F.3d at 631.

### 2. Treating Physicians Jayashree Raju, D.O., and Roberto Alvarez, M.D.

The Commissioner is responsible for determining whether a claimant meets the statutory definition of disability and does not give significance to a statement by a medical source that the claimant is "disabled" or "unable to work." 20 C.F.R. § 416.927(d). The ALJ correctly stated that Dr. Raju's and Dr. Alvarez's opinions that Payton was "totally disabled" and "unable to gain or sustain employment" would not be given any weight because these are issues reserved to the Commissioner.

In addition, the ALJ provided the following clear, convincing, specific, and legitimate reasons supported by substantial evidence in the record for doing so:  (1) the opinions contained no functional analysis, (2) they were unsupported by the medical evidence of record, and (3) they were not consistent with these physicians' own treatment notes. The ALJ did not err in determining that "these mere statements that the claimant is disabled are afforded no weight."

### 3. Treating Pain Management Specialist Brian Page, D.O.

The ALJ correctly declined to give controlling weight to Dr. Page's opinion that Payton has been unable to gain employment due to her medical conditions because this is an issue reserved to the Commissioner. The ALJ also provided the following reasons for affording Dr. Page's opinion little weight:  (1) the opinion did not include any functional limitations; (2) it was conclusory, providing no evidence relied upon in forming the opinion; (3) it was not consistent with the evidence of record or his own treatment notes;

- 8 -

and (4) it relied in part on an assessment of impairments for which Dr. Page rendered no treatment. Moreover, the ALJ concluded that Dr. Page relied quite heavily on Payton's subjective report of symptoms, which the ALJ found to be unreliable.

Dr. Page's September 28, 2010 opinion consists of one paragraph. It states:

> Joni Payton has been a long-term chronic pain patient of mine. We have been treating her for pain related to HIV as well as Hepatitis C, severe lumbar degenerative disc disease and disc bulging of the cervical spine. She is on high doses of pain medication. We have been performing injections and physical therapy on her for quite some time. She has severe low back pain, headaches and upper back pain as well as other medical conditions. She has been unable to gain employment due to all of these medical conditions as well as some sedation related to the high doses of pain medication she is currently taking.

This opinion plainly does not include any functional limitations and does not include or refer to any assessments of Payton's pain severity. Dr. Page's conclusion that Payton "has been unable to gain employment due to all of these medical conditions" is beyond his actual knowledge. Although Dr. Page's opinion states that he has treated Payton for "pain related to HIV as well as Hepatitis C," his treatment records refer only to neck and back pain, which supports the ALJ's conclusion that "Dr. Page only treated the claimant for her neck and back pain." Thus, the ALJ has provided clear, convincing, specific, and legitimate reasons supported by substantial evidence in the record for giving Dr. Page's opinion little weight.

Therefore, the ALJ did not err in giving little weight to Dr. Page's opinion.

### 4. Treating Pulmonologist Stephen Anthony, M.D.

The ALJ gave little weight to Dr. Anthony's opinion that Payton had been unable to gain employment because of her medical conditions as well as some sedation related to the high doses of pain medication she is taking. The ALJ provided the following clear,

convincing, specific, and legitimate reasons supported by substantial evidence in the record for affording Dr. Anthony's opinion little weight: (1) the opinion was based on assessments of some conditions for which Payton had received no treatment from Dr. Anthony, (2) it was not supported by the greater objective medical evidence of record, and (3) because the opinion departed substantially from the rest of the evidence of record and was prompted by Payton's request, it was likely that Dr. Anthony was motivated to assist Payton in obtaining benefits.

Therefore, the ALJ did not err in giving little weight to Dr. Anthony's opinion.

### 5. State Agency Reviewing Physicians

The ALJ gave the opinions of the state agency reviewing physicians "great weight in this case based on their consistency with the greater objective medical evidence of record, particularly regarding the assessment that the claimant could perform a range of sedentary exertion." However, the ALJ afforded their opinions only partial weight because "the assertions that the claimant could perform a range of light exertion remains unsupported by the evidence of record," "[i]t does not appear these physicians adequately considered the claimant's subjective complaints," and "additional evidence, which supports the residual functional capacity reached herein, was submitted at the hearings level." Therefore, the ALJ did not err by giving the opinions of the state agency reviewing physicians partial weight to the extent they were supported by the evidence of record.

### C. The ALJ Did Not Err by Rejecting the Third Party Report from Payton's Roommate, Louis Rizzatti.

In additional to medical sources, the ALJ may consider evidence from spouses, parents, friends, and others regarding the severity of a claimant's impairment and how it affects her ability to work. 20 C.F.R. §§ 404.1513(d)(4), 416.913(d)(4). "In considering evidence from 'non-medical sources' who have not seen the individual in a professional capacity in connection with their impairments, such as spouses, parents, friends, and

- 10 -

neighbors, it would be appropriate to consider such factors as the nature and extent of the relationship, whether the evidence is consistent with other evidence, and any other factors that tend to support or refute the evidence." SSR 06-3p, 2006 WL 2329939 at *5. Lay witness evidence is competent evidence and cannot be disregarded without providing specific reasons germane to each witness. *Bruce v. Astrue*, 557 F.3d 1113, 1115 (9th Cir. 2009). The ALJ may not discredit lay testimony as not supported by medical evidence in the record. *Id.* at 1116 (citing *Smolen v. Chater*, 80 F.3d 1273, 1292 (9th Cir. 1996)).

The ALJ stated:

> The third party statements of the claimant's boyfriend/roommate do not establish that the claimant is disabled []. Since this individual makes no reference to being trained to make exacting observations as to dates, frequencies, types and degrees of medical signs and symptoms, or of the frequency or intensity of unusual moods or mannerisms, the accuracy of the third party statements is questionable. Moreover, by virtue of the relationship as a friend and roommate of the claimant, he cannot be considered a disinterested third party whose statement would not tend to be colored by affection for the claimant and a natural tendency to agree with the symptoms and limitations the claimant alleges. Most importantly, significant weight cannot be given to the third party's statements because they, like the claimant's, are simply not consistent with the preponderance of the opinions and observations by medical doctors in this case.

Thus, the ALJ provided two specific reasons germane to Payton's roommate, Louis Rizzatti: lack of qualifications to make exacting observations regarding Payton's medical symptoms and the nature of the relationship. Even though the ALJ could not discredit the lay witness opinion solely because it was not supported by medical evidence, it was not error to consider the opinion's consistency with other evidence along with other factors.

- 11 -

Moreover, even if the ALJ had given the lay witness opinion significant weight, the opinion did not establish that Payton was unable to perform sedentary work with the limitations identified in the residual functional capacity assessment. Rizzatti stated that Payton had good days and bad days, but on good days, she shopped, cleaned, worked in the garden, and did housework. He said that on some days, she can do nothing, but he did not say how frequently she could do nothing. He stated that she prepared food or meals once or twice daily. He said that her ability to perform household chores was inconsistent, but he did not say how frequently she was not able to do light housework. He also stated that she went to medical appointments frequently, she drives a car, and she can go out alone.

Therefore, the ALJ did not err by concluding that significant weight could not be given to Rizzatti's third party statement.

IT IS THEREFORE ORDERED that the final decision of the Commissioner of Social Security is affirmed. The Clerk shall enter judgment accordingly and shall terminate this case.

Dated this 11th day of July, 2013.

_____
Neil V. Wake
United States District Judge